ORIGINAL

FILED IN CHAMBERS
U.S.D.C. Atlanta

SEP 22 2026

Kevin P. Weimer, Clerk
By: Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

*v.*

ROOSEVELT TOBIAS BAILEY,
A.K.A. TOBY BAILEY, AND
ALVIN JONES

Criminal Indictment

No. 1:26-CR-0442

THE GRAND JURY CHARGES THAT:

## Background

### *Relevant Terms*

1. A standby letter of credit ("SBLC") is a financial guarantee provided by a bank on behalf of a client (the applicant) to a third party (the beneficiary). An SBLC promises payment to the beneficiary if the applicant fails to fulfill certain contractual obligations or defaults. It is not a money-generating investment or a form of routine payment.

2. An Interest on Lawyers' Trust Account ("IOLTA") is a pooled, interest-bearing trust account used by attorneys to hold client funds, such as retainers and court fees.

### *Relevant Entities, Organizations, and Individuals*

3. Borg Global Holdings LLC ("Borg Global") was a Georgia corporation. On or about September 25, 2017, articles of incorporation for Borg Global were filed with the Georgia Secretary of State, identifying the defendant, ROOSEVELT TOBIAS BAILEY, A.K.A. TOBY BAILEY, as the organizer of the corporation.

4. Borg Investment Bank & Capital Trust ("Borg Bank") was a Washington, D.C. statutory trust formed on or about October 26, 2018, with its principal place of business in Duluth, Georgia. BAILEY was the chairman, president, CEO, and sole managing trustee of Borg Bank.

5. Defendant ALVIN JONES was an attorney, licensed to practice law in Florida.

***Relevant Financial Institutions***

6. Wells Fargo was a financial institution headquartered in San Franscisco, California.

7. Bank of America was a financial institution headquartered in Charlotte, North Carolina.

8. BBVA Bancomer Bank was a financial institution headquartered in Mexico City, Mexico.

9. JPMorgan Chase Bank was a financial institution headquartered in Columbus, Ohio.

10. Navy Federal Credit Union was a financial institution headquartered in Vienna, Virginia.

**Counts One through Seven**
**Wire Fraud**
**(18 U.S.C. § 1343)**

11. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 10 of this Indictment as if fully set forth here.

12. From in or about October 2018 and continuing through at least in or about October 2022, in the Northern District of Georgia and elsewhere, Defendant ROOSEVELT TOBIAS BAILEY, A.K.A. TOBY BAILEY, aided and abetted by, and aiding and abetting, others known and unknown to the Grand Jury, knowingly devised and intended to devise a scheme and artifice to defraud investors, and to obtain money and property from investors, by means of materially false and fraudulent pretenses, representations, and promises, and by the omission of material facts, and for the purpose of executing the scheme and artifice to defraud, with the intent to defraud, caused to be transmitted by means of wire communications in interstate and foreign commerce certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

***The Scheme to Defraud***

13. On or about October 26, 2018, BAILEY formed Borg Bank and, through Borg Bank, solicited investors for two types of investment contracts: (1) the SBLC program and (2) the Micro-Cap program.

14. Between in or about October 2018 and in or about October 2022, BAILEY promoted the SBLC program and the Micro-Cap program through in-person meetings, oral communications through phone and video conference calls, and written communications through email and WhatsApp messages.

15. In communicating with potential investors about the SBLC program, BAILEY claimed that Borg Bank could lease or monetize an SBLC from one or more large international banks with investor funds. Through monetizing the SBLC, BAILEY represented that the company obtaining the SBLC could use it as collateral against

its own line of credit, retain some of the proceeds from that monetization, and give the rest of the proceeds to Borg Bank and its investors. BAILEY represented to potential investors that, if they invested in the SBLC program, they were guaranteed substantial returns—up to 16 times their investment—within 30 to 90 days. In truth and in fact, no investments were or would be made for monetization of SBLCs, and BAILEY used and intended to use the funds obtained from investors for his own purposes.

16. In communicating with potential investors about the Micro-Cap program, BAILEY claimed that Borg Bank would pool investor funds to purchase precious stones and metals, such as diamonds and gold, from outside of the United States and then resell them for a higher price in the United States. BAILEY guaranteed that investors' principal funds would be doubled in a short period. In truth and in fact, hardly any investments were or would be made for purchasing and reselling precious stones and metals, and BAILEY used and intended to use the funds obtained from investors for his own purposes.

17. BAILEY represented to investors that each program—SBLC and Micro-Cap—had little to no investment risk.

18. As part of the scheme to defraud, BAILEY sent investors an Asset Placement and Management Agreement ("APMA") with Borg Bank. Before investing in one of Borg Bank's programs, BAILEY instructed investors to sign the APMA and send it back to him.

19. Each APMA signed and returned to BAILEY by investors stated that BAILEY had "full authority" over Borg Bank, which was described as an entity involved in

"global asset monetization" and "global buy/sell trading activities." The APMA also stated that each investor's money would be used for either the SBLC program or the Micro-Cap program, depending on the program chosen by the investor.

20. Each APMA also reiterated promises that BAILEY made to investors about guaranteed returns and little investment risk for both programs. For the SBLC program, the APMAs stated that Borg Bank would choose the "best trading program strategies from SBLC monetization," that investor funds would be used only for monetization of SBLCs, and that investors would receive up to 16 times their principal investments within 30 to 90 days.

21. Through the APMAs and BAILEY'S other oral and written communications, the investors were instructed to send their investment funds for both programs to IOLTA accounts held by BAILEY's attorney, Defendant ALVIN JONES.

22. BAILEY directed JONES on when and where to move investor funds upon receipt in an IOLTA account. Rather than using the Micro-Cap investor funds for purchasing and reselling precious stones and metals, BAILEY purchased very few precious stones and made little to no profit off their resale. And rather than using the SBLC investor funds for the monetization of SBLCs, BAILEY used the funds for himself, on other projects associated with Borg Global, and to pay earlier investors.

23. Between in or about October 2018 and in or about October 2022, Borg Bank received nearly $2 million in investor funds for both programs, with approximately $1 million received for the SBLC program. Of the $1 million received for the SBLC program, at least $400,000 was sent to BAILEY's bank accounts and over $200,000 was sent to earlier investors. The remainder of the

SBLC funds were sent to accounts for Borg Bank and Borg Global and spent on other projects associated with Borg Bank, but none of the funds were spent on the monetization of SBLCs.

24. In or about October 2022, Bailey ceased payments to, and communications with, investors in both the SBLC and Micro-Cap programs, and, as a result, investors suffered substantial financial losses.

25. BAILEY spent investor funds fraudulently obtained through the SBLC and Micro-Cap programs on personal expenses, such as buying furniture and furs, paying credit card bills, and paying fees for personal real estate deals.

*Execution of the Scheme*

26. On or about the dates set forth in the following table, in the Northern District of Georgia and elsewhere, the defendant, ROOSEVELT TOBIAS BAILEY, A.K.A. TOBY BAILEY, aided and abetted by, and aiding and abetting, others known and unknown to the Grand Jury, did, with intent to defraud, for the purpose of executing the above-described scheme, cause to be transmitted by means of wire communications in interstate and foreign commerce, certain signs, signals, pictures, and sounds, described below:

| Count | Date | Description of Wire |
|---|---|---|
| 1 | September 24, 2021 | Wire transfer of $25,000 from victim K.C.'s Bank of America account ending in 0372 to JONES's Wells Fargo IOLTA ending in 0642. |

| Count | Date | Description of Wire |
|---|---|---|
| 2 | September 29, 2021 | Wire transfer of $9,000 from victim R.A.'s JPMorgan Chase account ending in 2555 to JONES's Wells Fargo IOLTA ending in 0642. |
| 3 | October 15, 2021 | Wire transfer of $16,000 from victim D.E.'s Navy Federal Credit Union account ending in 4117 to JONES's Wells Fargo IOLTA ending in 0642. |
| 4 | July 8, 2022 | Wire transfer of $29,990 from victim A.H.'s BBVA Bancomer Bank account ending in 7437 to JONES's Bank of America IOLTA ending in 0533. |
| 5 | July 11, 2022 | Wire transfer of $24,990 from victim A.H.'s BBVA Bancomer Bank account ending in 7437 to JONES's Bank of America IOLTA ending in 0533. |
| 6 | September 7, 2022 | Wire transfer of $44,990 from victim A.H.'s BBVA Bancomer Bank account ending in 7437 to JONES's Bank of America IOLTA ending in 0533. |
| 7 | October 17, 2022 | Wire transfer of $49,990 from victim A.H.'s BBVA Bancomer Bank account ending in 7437 to JONES's Bank of America IOLTA ending in 0533. |

All in violation of title 18, United States Code, Sections 1343 and 2.

**Count Eight**
**Money Laundering Conspiracy**
**(18 U.S.C. § 1956(h))**

27. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 10 and 13 through 25 of this Indictment as if fully set forth here.

28. From in or about October 2018, and continuing through in or about at least December 2022, in the Northern District of Georgia and elsewhere, the defendants, ROOSEVELT TOBIAS BAILEY, A.K.A. TOBY BAILEY, and ALVIN JONES, did knowingly combine, conspire, confederate, agree, and have a tacit understanding with each other and others unknown to the Grand Jury, to commit offenses against the United States, that is:

(a) to knowingly conduct and attempt to conduct a financial transaction in and affecting interstate commerce and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

(b) to knowingly engage and attempt to engage in a monetary transaction by, through, and to a financial institution, in and

affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, in violation of Title 18, United States Code, Section 1957.

***Manner and Means***

29. Between in or about October 2018 and in or about December 2022, BAILEY directed investors to send funds for the SBLC program to the IOLTA accounts of his attorney, JONES. BAILEY received approximately $1 million from investors for the SBLC program, the majority of which was sent to JONES's IOLTA accounts.

30. Investors trusted that BAILEY and JONES would transfer the funds deposited into the IOLTA accounts for investments in the monetization of SBLCs. And the use of IOLTA accounts, held by an attorney, to receive the funds, increased the perceived legitimacy of BAILEY and the SBLC program in the eyes of investors.

31. In truth and in fact, BAILEY and JONES did not use JONES's IOLTA accounts to transfer investor funds for the purpose of investments in SBLCs but instead used the IOLTA accounts to conceal transfers of investor funds to BAILEY'S personal and business bank accounts.

32. Between in or about October 2018 and in or about December 2022, BAILEY regularly directed JONES to transfer investor funds for the SBLC program from JONES'S IOLTA accounts to BAILEY's personal and business accounts. JONES sent over $280,000 of investor funds to BAILEY's accounts..

All in violation of Title 18, United States Code, Section 1956(h).

**Counts Nine through Eleven**
**Transactional Money Laundering**
**(18 U.S.C. § 1957)**

33. The Grand Jury re-alleges and incorporates by reference the allegations contained above in paragraphs 1 through 10, 13 through 25, and 29 through 32 of this Indictment as if fully set forth here.

34. On about the dates listed in the following table, in the Northern District of Georgia and elsewhere, the defendants, ROOSEVELT TOBIAS BAILEY, A.K.A. TOBY BAILEY, and ALVIN JONES, aided and abetted by each other and others unknown to the Grand Jury, did knowingly engage in and attempt to engage in monetary transactions in criminally derived property of a value greater than $10,000, that is, the deposit, withdrawal, transfer, and exchange, in and affecting interstate and foreign commerce, of funds and monetary instruments by, through, and to a financial institution, namely, the monetary transactions described below, such property having been derived from a specified unlawful activity, namely wire fraud, in violation of Title 18, United States Code, Section 1343:

| Count | Date | Monetary Transactions |
|---|---|---|
| 9 | September 24, 2021 | Transfer of $13,000 from JONES'S Wells Fargo IOLTA ending in 0642 to BAILEY's Wells Fargo account ending in 0996. |
| 10 | July 11, 2022 | Transfer of $15,000 from JONES'S Bank of America IOLTA ending in 0533 to BAILEY's Wells Fargo account ending in 0996. |

| Count | Date | Monetary Transactions |
|---|---|---|
| 11 | September 8, 2022 | Transfer of $12,500 from JONES'S Bank of America IOLTA ending in 0533 to BAILEY's Wells Fargo account ending in 0996. |

All in violation of Title 18, United States Code, Sections 1957 and 2.

**Forfeiture**

35. Upon conviction of one or more of the offenses alleged in Counts One through Seven of this Indictment, the defendant, ROOSEVELT TOBIAS BAILEY, A.K.A. TOBY BAILEY, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any property, constituting, or derived from, proceeds obtained, directly or indirectly, as a result of said violations, including, but not limited to, the following:

MONEY JUDGMENT: a sum of money in United States currency, representing the amount of proceeds obtained as a result of the offenses alleged in Counts one through Seven of this Indictment.

36. Upon conviction of one or more of the offenses alleged in Counts Eight through Eleven of this Indictment, the defendants, ROOSEVELT TOBIAS BAILEY, A.K.A. TOBY BAILEY, and ALVIN JONES, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), all property, real or personal, involved in such offenses, or any property traceable thereto, including, but not limited to, the following:

MONEY JUDGMENT: A sum of money in United States currency, representing the amount of property obtained as a result of the offenses alleged in Counts Eight through Eleven of this Indictment.

37. If, as a result of any act or omission of the defendants, any property subject to forfeiture:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

[This section intentionally left blank.]

the United States intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property.

A TRUE BILL

/s/

FOREPERSON

THEODORE S. HERTZBERG
*United States Attorney*

BETHANY L. RUPERT
*Assistant United States Attorney*
Georgia Bar No.971630

SARA S. LIM
*Assistant United States Attorney*
Georgia Bar No. 677519

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000 (tel.)